IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GENE SMITH                                                                                          PLAINTIFF

v.                                            No. 4:12-cv-727-DPM

ARKANSAS MILITARY DEPARTMENT;
RAY MOIX, Individually and in his official
capacity as Director of the Arkansas Military
Department; DEPARTMENT OF STATE
RESOURCES; and JUDY BRAGG, Individually
and in her official capacity as Personnel
Manager for the Arkansas Military Department                          DEFENDANTS

ORDER

Why didn't the Camp Robinson gym promote Gene Smith and hire him as its new Program Coordinator? Smith says it was either because he was Native American, or because he filed an EEOC complaint against the gym a few years ago. The Defendants—the state agencies that run the gym, and two agency managers—say it was because Smith had neither the necessary experience nor education for the job.   Smith raises retaliation and discrimination claims under Title VII, the Arkansas Civil Rights Act, and 28 U.S.C. § 1983. All Defendants move for summary judgment on all claims.

**Background.** Taking the disputed facts, and all reasonable inferences, in Smith's favor, *Wierman v. Casey's General Stores*, 638 F.3d 984, 992–93 (8th Cir. 2011), here's what happened. Smith was a Recreational Activity Leader II at Camp Robinson's gym. The gym was taking applications for a management position that required, among other things, a bachelor's degree in public administration, or its equivalent, and three years of relevant experience. Smith applied. He has an associate's degree in criminal justice, a law degree, and diverse work experience, including six years working in a gym. He was asked to interview.

But, despite Smith being tied for first place on the gym's applicant-scoring system with George Woolford, the gym didn't hire him or Woolford. It hired John Davis, who had the third highest score. Davis had more experience and interviewed better than both Woolford and Smith; and Davis had more relevant education than Woolford. Both Woolford and Smith pulled ahead on the scorecard because of their military service. № 18-1 at 22. Moix, the Military Department director, sought clarification from the local Office of Personnel Management on Smith's, but no one else's, qualifications and experience. № 18-3 at 4. Don Lukas was functioning as a one-person OPM Qualifications Review Committee. After reviewing Smith's credentials,

OPM (speaking through Lukas) said that Smith was unqualified for the position because he didn't satisfy the minimum education or experience requirements. Then the gym hired Davis.

**Discrimination**. Smith's burden to establish a *prima facie* case isn't heavy, and he's carried it. *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074–75 (8th Cir. 2011). He's a Native American—his siblings identify themselves as American Indians, and his mother's death certificate confirms her ancestry. № 18-1 at 7-8. Smith's lack of formal tribal membership is not dispositive at this point in the case. Setting OPM's challenged view aside, Smith is otherwise qualified for the job. He worked in a fitness center for six years and his legal education is somewhat related—some of the Program Director's needed skills are "[k]nowledge of state and federal laws and regulations[,]" ability to "apply state and federal laws and regulations[,]" and grant writing. № 18-2 at 1. Smith didn't get the position and Davis, who isn't Native American, did. That's sufficient at this stage. *Arraleh v. County of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006).

The gym, in response, offers legitimate reasons for choosing Davis. He had seventeen years of experience, twelve of those in gym management.

Davis also had a degree in physical education and recreation. Plus, he outperformed Smith in the interview. № 18-1 at 22. Defendants point out that the veterans-preference points should only serve as a tiebreaker when two applicants are otherwise equally qualified—a situation they say didn't exist here. Defendants also refer to OPM's rejection of Smith's qualifications, but that explanation doesn't hold up: the gym sent only Smith's file to OPM. Davis also lacked the required degree in public administration or general business—OPM might have rejected Davis's application too if it had had the chance. The gym otherwise scored Smith and Davis equally on relevant education.

Smith hasn't shown, though, that the gym's reasons for not hiring him were pretext for discrimination. He hasn't shown that Davis was a less-qualified applicant. *Compare Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 793 (8th Cir. 2011). He hasn't shown that the gym has changed its reasons for not hiring Smith. 656 F.3d at 793–94. With one exception, nothing indicates that people in similar circumstances were treated differently. 656 F.3d at 796–97. No evidence indicates that some racially motivated reason was behind Davis's, and not Smith's, hire.

Any pretext argument teeters, then, on the veterans-points issue. The deep question is whether a jury could reasonably conclude that the gym's take on how the veterans points were applied was a cover up for discrimination. By law, veterans points apply only when two applicants have "substantially equal qualifications[.]" ARK. CODE ANN. § 21-3-302(c). No reasonable fact finder could conclude that Smith and Davis had substantially equal qualifications. The comparison between the candidates' education was essentially a draw. But Davis had almost three times the gym experience Smith did — some as a Program Coordinator, the position both were vying for. Smith hasn't come forward with enough proof of racial motivation to rebut this strong evidence supporting Davis's hiring. Smith's discrimination claims fail as a matter of law.

**Retaliation.** Smith's 2010 EEOC charge is stale. But this two-year old allegation weighed in the gym's decision to send Smith's materials to OPM. Moix says he was worried that Smith might sue when he wasn't hired. So Moix says he sought a disinterested opinion. № 18-3 at 4. Perhaps Moix was just being prudent, but a reasonable juror might see it differently and infer a retaliatory motive in these circumstances. To succeed on his retaliation

claims, Smith must demonstrate that his old EEOC complaint wasn't just a motivating factor, but the determining one, in the gym's decision to hire someone else. *Wright v. St. Vincent Health System*, 730 F.3d 732, 737–38 (8th Cir. 2013). Without the EEOC complaint, would the gym have hired Smith? Davis was qualified and more experienced than Smith. And Davis wowed the interviewers. № 18-1 at 22. There are a number of reasons the gym might have chosen Davis over Smith. None of these reasons, however, supports the conclusion that the 2012 decision was in retaliation for Smith's 2010 EEOC charge. Smith's proof of an alleged pay back is just too thin. The retaliation claims also fail as a matter of law.

Defendants' motion for summary judgment, № 18, is granted. Smith's embedded request to amend his complaint, № 23 at 3, is denied — the deadline for amendments has passed, № 11 at 1, and he gives no particulars about how his claims could be salvaged by an amendment. His request for a hearing is denied. The Court favors hearings, but is unable to schedule one before the imminent trial date and the case is clear on the papers.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

24 June 2014